|  |  |
|---|---|
| NEW JERSEY NECK AND BACK INSTITUTE,<br><br>                                    *Plaintiff*,<br>v.<br><br>HIGHMARK BLUE CROSS BLUE SHIELD, ET AL.,<br><br>                                    *Defendants*. | Civil Action No.: 3:18-cv-9682 (PGS)(TJB)<br><br>**MEMORANDUM AND ORDER** |

SHERIDAN, U.S.D.J.

This matter comes before the Court on defendants' motion to dismiss plaintiff's amended complaint, (ECF No. 12). This case arises from a dispute over nonpayment of medical services. Plaintiff New Jersey Neck and Back Institute is a company that provides healthcare services. (Amended Compl. at ¶ 1; ECF No. 1). On July 8, 2014, Sandro LaRocca M.D., employed by plaintiff, performed surgery on nonparty R.V. (*Id.* at ¶¶ 15). The surgery included an anterior disketomy, anterior arthrodesis, and a placement of a PEEK Interbody spacer. (*Id.* at ¶ 15).

R.V. received health coverage through Highmark Blue Cross Blue Shield (hereinafter "HBCBS"), sponsored by Connoisseur Media, LLC. (*Id.* at ¶ 5; *see also* Def. Ex. B, ECF No. 12-4). The plan is an employee welfare benefit plan, as defined by ERISA. (*See* Def. Br. at 3). The plan contains the following provision:

> The right of a Member to receive payment is not assignable, except to the extent required by law, nor may benefits of this Contract be transferred either before or after Covered Services are rendered.

> [(Def. Ex. B, ECF No. 12-4, at 96)].[1]

---

[1] When deciding a Rule 12(b)(c) motion, courts may only consider "the complaint, exhibits attached to the complaint, matters of public record, as well as any undisputedly authentic documents if the complainant's claims are based on these documents." *Mayer v. Belichick*, 605 F.3d 223, 230 (3d Cir. 2010). Additionally, courts may consider "undisputedly authentic document that a defendant attaches as an exhibit to a motion.

1

As plaintiff was an out of network or non-participating medical provider, it contacted HBCBS to receive an authorization to render medical services to R.V. (Amended Compl., ECF No. 11, at ¶ 14). On June 19, 2014, plaintiff received from HBCBS an authorization under authorization number 6787146. (*Id.*; *see also* Def. Ex. C, ECF No. 12-5). The authorization letter explained that while the "inpatient admission has been approved, the authorization is solely for the purpose of advising you of the medical necessity of the requested service. It is NOT a verification of available benefits or authorization for new benefits. No guarantee of payment is being made[.]" (Def. Ex. C, ECF No. 12-5, at 2).[2] Plaintiff then performed the surgery on R.V. (Amended Compl., ECF No. 11, at ¶¶ 15-16). After completion of the surgery, plaintiff billed HBCBS $90,125.00. (*Id.* at ¶ 18). HBCBS paid only $3,266.72 toward the charges, leaving a balance of $86,858.28. (*Id.* at ¶ 20). Plaintiff filed an amended complaint on June 27, 2018, bringing a breach of implied contract claim (Count I), a promissory estoppel claim (Count II), an account stated claim (Count III), a fraudulent inducement claim (Count IV), a claim for failure to make all payments pursuant to a members plan under 29 U.S.C. 1132 § (a)(1)(B) (Count V), a claim for breach of fiduciary duty under 29 U.S.C. § 1132(a)(3) and 29 U.S.C. § 1104(a)(1) (Count VI), and a claim for failure to establish/maintain reasonable claims procedures under 29 C.F.R. 2560.503.1 (Count VII).

Presently before the Court is HBCBS's motion to dismiss. (ECF No. 12). HBCBS argues that plaintiff's claims must be dismissed because: (1) plaintiff's state law claims are preempted by ERISA; (2) plaintiff's state law claims fail to state a claim against HBCBS under New Jersey Law;

---

to dismiss if the plaintiff's claims are based on the document." *Pension Benefit Guar. Corp. v. White Consol. Indus.*, 998 F.2d 1192, 1196 (3d Cir. 1993). Accordingly, the Court may consider the at issue insurance plan and pre-authorization letter, attached as exhibits to HBCBS's motion to dismiss.

[2] Since the authorization is an essential authentic document, it was considered by the Court. *See supra* note 1.

and (3) plaintiff's ERISA claims must be dismissed because plaintiff lacks standing to bring these claims. In response, plaintiff argues that its claims are not preempted by ERISA, and it has sufficiently pleaded state law causes of action against HBCBS.

## LEGAL STANDARD

On a motion to dismiss for failure to state a claim pursuant to Fed. R. Civ. P. 12(b)(6), the Court is required to accept as true all allegations in the complaint and all reasonable inferences that can be drawn therefrom, and to view them in the light most favorable to the non-moving party. *See Oshiver v. Levin, Fishbein, Sedran & Berman,* 38 F.3d 1380, 1384 (3d Cir. 1994). "To survive a motion to dismiss, a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Ashcroft v. Iqbal,* 556 U.S. 662, 678 (2009) (quoting *Bell Atl. Corp. v. Twombly,* 550 U.S. 544, 570 (2007)). The Third Circuit set forth a three-part analysis for determining whether not a complaint may survive a motion to dismiss for failure to state a claim:

> First, the court must "tak[e] note of the elements a plaintiff must plead to state a claim." Second, the court should identify allegations that, "because they are no more than conclusions, are not entitled to the assumption of truth." Finally, "where there are well-pleaded factual allegations, a court should assume their veracity and then determine whether they plausibly give rise to an entitlement for relief."

*Santiago v. Warminster Twp.,* 629 F.3d 121, 130 (3d Cir. 2010*); see also Bistrian v. Levi,* 696 F.3d 352, 365 (3d Cir. 2012).

"'This last step is 'a context-specific task that requires the reviewing court to draw on its judicial experience and common sense.'" *Bistrian,* 696 at 365 (quoting *Iqbal,* 556 U.S. at 679). While a court will accept well-pleaded allegations as true for the purposes of the motion, it will not accept bald assertions, unsupported conclusions, unwarranted inferences, or sweeping legal conclusions cast in the form of factual allegations. *Iqbal,* 556 U.S. at 678-79; *see also Morse v.*

3

*Lower Merion School District*, 132 F.3d 902, 906 (3d Cir. 1997). A complaint should be dismissed only if the well-pleaded alleged facts, taken as true, fail to state a claim. *See In re Warfarin Sodium*, 214 F.3d 395, 397-98 (3d Cir. 2000). The question is whether the claimant can prove any set of facts consistent with his or her allegations that will entitle him or her to relief, not whether that person will ultimately prevail. *Semerenko v. Cendant Corp.*, 223 F.3d 165, 173 (3d Cir.), *cert. denied, Forbes v. Semerenko*, 531 U.S. 1149 (2001).

## ANALYSIS

"ERISA possesses 'extraordinary pre-emptive power.'" *Menkes v. Prudential Ins. Co. of Am.*, 762 F.3d 285, 293 (3d Cir. 2014) (quoting *Metro. Life Ins. Co. v. Taylor*, 481 U.S. 58, 65 (1987)). ERISA provides for two types of preemption. Under ERISA's civil enforcement provision, Section 502(a), "state law causes of action that are within the scope of . . . § 502(a) are completely pre-empted." *Pascack Valley Hosp., Inc. v. Local 464A UFCW Welfare Reimbursement Plan*, 388 F.3d 393, 400 (3d Cir. 2004) (quotation omitted). Additionally. section 514(a) states that ERISA "shall supersede any and all State laws insofar as they may now or hereafter relate to any employee benefit plan" as defined under the Act. 29 U.S.C. § 1144(a). "Complete preemption under § 502(a) is a 'jurisdictional concept,' whereas express preemption under § 514 is a 'substantive concept governing the applicable law.'" *Bauman v. In re U.S. Healthcare, Inc. (In re U.S. Healthcare, Inc.)*, 193 F.3d 151, 160 (3d Cir. 1999) (quoting *N.J. Carpenters v. Tishman Constr. Corp.*, 760 F.3d 297, 302 (3d Cir. 2014)). "Unlike ordinary preemption, which would only arise as a federal defense to a state-law claim, complete preemption operates to confer original federal subject matter jurisdiction notwithstanding the absence of a federal cause of action on the face of the complaint. The Supreme Court has held that "in enacting the civil-enforcement provisions of section 502(a) of ERISA, Congress intended to completely

preempt state law." *Id.* In *In re U.S. Healthcare, Inc*, the court explained it was necessary to distinguish between Sections 502(a) and 514(a), explaining "State-law claims that are subject to express preemption are displaced and thus subject to dismissal . . . Claims that are completely preempted are 'necessarily federal in character,' and thus are converted into federal claims." *Id.*

I.  **Complete Preemption**

In *Pascack Valley Hosp., Inc* and *N.J. Carpenters*, the courts, in determining whether a claim was removable and thus completely preempted under Section 502(a), explained, "a claim is completely preempted, and thus removable, under ERISA § 502(a) only if: (1) the plaintiff could have brought the claim under § 502(a); and (2) no other independent legal duty supports the plaintiff's claim." *N.J. Carpenters*, 760 F.3d at 303.

The Court first examines whether plaintiff's claims are completely preempted by Section 502(a), ERISA's civil enforcement provision. For complete preemption to apply, both prongs must be satisfied. *Id.* Here, the parties agree that plaintiff lacks standing to bring an ERISA claim, as it is an out-of-network provider, and is neither a participant nor a beneficiary under the plan. Further, the plan contains an anti-assignment clause, consequently there was no assignment of any benefits. (*See* Def. Ex. B, ECF No. 12-4, at 96). Regarding the first prong, plaintiff could not bring its claims pursuant to Section 502(a) of ERISA. The second prong is in dispute, as plaintiff argues that an independent legal duty was created through the implied-in-fact contract, however, for claims to be completely preempted, both the first and second prong must be met. As that is not the case here, plaintiff's claims are not completely preempted by Section 502(a) of ERISA, because plaintiff does not have standing to bring a claim under Section 502(a).[3]

---

[3] Plaintiff brings three separate ERISA claims in addition to its State law claims: (1) Failure to make all payments pursuant to a members plan under 29 U.S.C. § 1132(a)(1)(b) (Count Five); (2) Breach of fiduciary duty under 29 U.S.C. § 1132(a)(3), U.S.C. § 11-4(a)(1) (Count Six); and (3) Failure to establish/maintain reasonable claims procedures under 29 C.F.R. 256-.503-1 (Count Seven). Plaintiff does not address how

## II. Express Preemption

Having determined that plaintiff may not bring a claim under Section 502(a) because it lacks standing, the Court now evaluates whether plaintiff's state law claims are expressly preempted under Section 514(a) of ERISA. Section 514(a) states that ERISA "shall supersede any and all State laws insofar as they may now or hereafter relate to any employee benefit plan" as defined under the Act. 29 U.S.C. § 1144(a). "'Relate to' has always been given a broad, common-sense meaning, such that a state law 'relates to an employee benefit plan, in the normal sense of the phrase, if it has a connection with or reference to such a plan.'" *Menkes*, 762 F.3d at 293-94 (quoting *Shaw v. Delta Air Lines, Inc.*, 463 U.S. 85, 96-97 (1983)). Under ERISA, "[t]he term 'State law' includes all laws, decisions, rules, regulations, or other State action having the effect of law, of any State." 29 U.S.C. § 1144 (c)(1).

"State common law claims fall within this definition and, therefore, are subject to ERISA preemption." *Nat'l Sec. Sys. v. Iola*, 700 F.3d 65, 83 (3d Cir. 2012). Most recently, the Third Circuit has found that "ERISA preempts parallel state law remedies . . . [such as] breach-of-contract claim[s]." *McCann v. Unum Provident*, No. 16-2014, 2018 U.S. App. LEXIS 29638, slip op. at 23 (3d Cir. Oct. 5, 2018); *see also Ford v. Unum Life Ins. Co. of Am.*, 351 F. App'x 703, 706 (3d Cir. 2009) ("State law claims such as . . . breach of contract . . . would ordinarily fall within the scope of ERISA preemption, if the claims relate to an ERISA-governed benefits plan."); *accord Early v. United States Life Ins. Co.*, 222 F. App'x 149, 152 (3d Cir. 2007); *Pryzbowski v. U.S. Healthcare, Inc.*, 245 F.3d 266, 278 (3d Cir. 2001). For example, in *Iola*, the court explained that the common law claims were preempted because the claims "'have a connection with' the ERISA

---

its concession that it does not have standing to bring an ERISA claim affects these counts in its complaint. Further, the plan contains an express anti-assignment clause, such that the patient, as the plan's beneficiary and as participant, is prohibited from assigning any payments or benefits. (*See* Def. Ex. B, ECF No. 12-4). Accordingly, Counts Five, Six, and Seven of plaintiff's complaint are dismissed.

plans because they are premised on the existence with those plans." 700 F.3d at 84. The court further explained, "[t]o prevail on those claims, the plaintiffs would have had to plead, and the court to find, that the plans were in fact adopted." *Id.*

Recently, cases raising the exact same claims as discussed here (breach of contract, promissory estoppel, account stated, and fraudulent inducement) against insurance companies for refusing coverage, or not providing full coverage, for non-party providers have been resolved by finding those claims preempted by ERISA. *See Glastein v. Horizon Blue Cross Blue Shield of Am.*, No. 17-7983, 2018 U.S. Dist. LEXIS 135911, at *8 (D.N.J. Aug. 13, 2018) (hereinafter "Glastein I"); *Advanced Orthopedics & Sports Med. Inst. v. Blue Cross Blue Shield of N.J.*, No. 17-11807, 2018 U.S. Dist. LEXIS 127781, at *12 (D.N.J. July 31, 2018); *Atl. Shore Surgical Assocs. v. Horizon Blue Cross Blue Shield*, No. 17-07534, 2018 U.S. Dist. LEXIS 90734, at *10 (D.N.J. May 31, 2018); *but see Glastein v. Aetna, Inc.*, No. 18-9262, 2018 U.S. Dist. LEXIS 162857, at *5 (D.N.J. Sep. 24, 2018) (hereinafter "Glastein II") (concluding that the plaintiff's state law claims of breach of contract, promissory estoppel, account stated, and fraudulent inducement were not preempted by ERISA because the state law issues "neither 'refer[ed] to' nor [had] an 'impermissible connection with' an ERISA plan.").

Here, like in *Glastein I*, and *Atl. Shore. Surgical Assocs.*, the Court cannot analyze plaintiff's claims without referencing the plan, as each claim is based on HBCBS's preauthorization, and plaintiff argues that this preauthorization itself entitles it to "fair and reasonable rates" for medical services. First, in the breach of contract claim, plaintiff alleges there was an implied-in-fact contract because, "by authorizing the surgery, [d]efendant agreed to pay the fair and reasonable rates for the medical services provided by [p]laintiff and [p]laintiff performed said services based upon those terms." (Amend. Compl., ECF No. 11 at ¶ 24). In the

promissory estoppel claim, plaintiff alleges that "by providing a pre-surgery authorization to [p]laintiff, [d]efendant promised that [p]laintiff would be paid for its services at a fair and reasonable rate." (*Id.* at ¶ 30). Finally, in the fraudulent inducement count, plaintiff alleges that "by providing a pre-surgery authorization . . . defendant induced plaintiff to provide the medical services . . . [i]nherent in the authorization was the promise to pay [p]laintiff the fair and reasonable value for the services provided." (*Id.* at ¶¶ 40-41).

First, it is important to note that the pre-authorization expressly states that the authorization "is NOT a verification of available benefits or authorization for new benefits. No guarantee of payment is being made[.]" (Def. Ex. C, ECF No. 12-5, at 2). Thus, plaintiff's arguments that an implied-in-fact contract was created based on this document must fail. To the extent that plaintiff argues that its claims do not relate to an ERISA plan, and is thus similar to *Pascack*, which it alleges held that "a provider has an independent legal right to pursue claims directly against an insurance company for failure to pay billed charges where pre-authorization is obtained," (Pl. Br. at 3), plaintiff's claims must also fail. In *Pascack*, an in-network medical provider entered into a "Network Hospital Agreement" with an independent consultant that "organized a network of hospitals that have agreed to accept discounted payment for medical services." *Pascack*, 388 F.3d at 396. This agreement was connected to a "subscriber agreement", that was entered into by the at issue insurance plan and MagNet, Inc., and this subscriber agreement discussed how Network Hospitals would be paid for covered services. *Id.* There, the Third Circuit determined that the in-network medical provider's state law claims were based on a legal duty that was independent of ERISA. *Id.* at 402. The Court explained that while the claims were "derived from an ERISA plan . . . [t]he crux of the parties dispute is the meaning of . . .[a separate contract,] the Subscriber Agreement." *Id.* Here, unlike in *Pascack*, the purported agreement does not contain any promise

8

of payment, or at what rate any payment may be. "[T]his Court can only resolve Plaintiff's claims by interpreting the Plan, not any independent contract, and [plaintiff's] right to recovery, if it exists, depends entirely on the terms and provisions of the Plan, which sets forth the reimbursement rate for out-of-network providers such as in this case." *Atl. Shore Surgical Assocs.*, 2018 U.S. Dist. LEXIS 90734, at *16.

Second, like in *Glastein I* and *Atl. Shore Surgical Assocs.*, examining plaintiff's claims requires examining the underlying ERISA plan. Here, plaintiff claims it is entitled to paid the "fair and reasonable value" of its services. However, the pre-authorization expressly states, "No guarantee of payment is being made and the appropriate customer service area should be contacted to verify if the requested service(s) are eligible to be covered under your benefit plan and to determine if there are any benefit and/or policy exclusions and/or limitations that may apply." (Def. Ex. C, ECF No. 12-5, at 2). However, this, "by necessity, requires consideration of the terms of the Plan, which sets forth the terms for receiving treatment by out-of-network providers and the payment or allowance that provider may receive." *Glastein I*, 2018 U.S. Dist. LEXIS 135911, at *9; *see also Atl. Shore Surgical Assocs*, 2018 U.S. Dist. LEXIS 90734, at *12 ("[A]s an out-of-network provider, [plaintiff] is automatically subject to the Plan's out-of-network benefit, which includes a deductible and authorizes payment at a lower rate than for in-network providers . . . It is [plaintiff's] dispute with this out-of-network reimbursement payment, which is set forth in the terms of the Plan, that is at the center of its allegations."). As in both *Glastein I*, and *Atl. Shore Surgical Assocs.*, the Court 'cannot analyze Plaintiff's claims without referencing the Plan.'" *Glastein I*, 2018 U.S. Dist. LEXIS 135911, at *9 (quoting *Atl. Shore Surgical Assocs.*, 2018 U.S. Dist. LEXIS 90734, at *12).

Accordingly, because plaintiff's State law claims are expressly preempted by Section 514(a) of ERISA, and plaintiff lacks standing to bring any claim under ERISA itself, plaintiff has failed to state a claim under which relief can be granted. Accordingly, plaintiff's amended complaint is dismissed.

## ORDER

Having carefully reviewed and taken into consideration the submissions of the parties, as well as the arguments and exhibits therein presented, and for good cause shown, and for all of the foregoing reasons,

IT IS on this ___13___ day of __Nov.__, 2018,

**ORDERED** that Defendant's motion to dismiss plaintiff's amended complaint (ECF No. 12) is GRANTED.

_____
PETER G. SHERIDAN, U.S.D.J.